**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**MALAK CHARARA,**

        **Plaintiff,**                                Civil Action No. 17-cv-13481

        v.                                         District Judge Arthur J. Tarnow

**COMMISSIONER OF**                   Magistrate Judge Mona K. Majzoub
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Malak Charara seeks judicial review under 42 U.S.C. § 405(g) of Defendant Commissioner of Social Security's determination that she is not entitled to benefits under the Social Security Act. (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 11) and Defendant's Motion for Summary Judgment (docket no. 15). This matter has been referred to the undersigned for determination of all non-dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(A) and issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). (Docket no. 2.) Having reviewed the pleadings, the Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2) and issues this Report and Recommendation.

**I.    RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 11) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 15) be **GRANTED**, and that the case be dismissed in its entirety.

## II.     PROCEDURAL HISTORY

On December 5, 2013, Plaintiff applied for Supplemental Security Income ("SSI"), alleging that she has been disabled since October 29, 2013. (TR 251.) The Social Security Administration initially denied Plaintiff's claims on March 6, 2014. (TR 160.) On April 2, 2015, Plaintiff appeared with a representative and testified at a hearing before Administrative Law Judge ("ALJ") Ena Weathers. (TR 108-139.) On August 7, 2015, ALJ Weathers issued an unfavorable decision on Plaintiff's claims. (TR 86-107.) However, on October 19, 2016, the Appeals Council issued an order remanding the case to the ALJ with instructions to consider "[n]ew and material evidence" which "provide[d] support for the medically determinable impairment of multiple sclerosis." (TR 78-79.) The Appeals Council directed the ALJ on remand to:

- Consider the new and material evidence that provides documentation of multiple sclerosis;

- Update the record and obtain additional evidence concerning the claimant's medically determinable impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 416.912-913). The additional evidence may include, if warranted and available, a consultative examination, and medical source statements about what the claimant can still do despite the impairments;

- Consider the new evidence documenting multiple sclerosis and further evaluate the claimant's alleged symptoms and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 416.929);

- If necessary, obtain evidence from a medical expert to clarify nature, severity, limiting effects, and/or onset of the claimant's impairments, in particular, the claimant's multiple sclerosis; and

- Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p).

(TR 80.)

On May 20, 2017, Plaintiff appeared for a hearing before ALJ Crystal L. White-Simmons. (TR 32-76.) On April 27, 2017, ALJ White-Simmons issued an unfavorable decision on Plaintiff's claims. (TR 7-23.) Plaintiff requested a review of the ALJ's decision with the Appeals Council, which was denied on July 26, 2017. (TR 1-3.) On October 25, 2017, Plaintiff commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court. (Docket no. 11; docket no. 15.)

### III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff sets forth a brief procedural history of this matter as well as a short summary of her medical issues. (Docket no. 11, pp. 6-17.) In addition, the ALJ summarized Plaintiff's medical record (TR 15-22), and Defendant adopted the ALJ's recitation of the facts (docket no. 15, p. 4). Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also refer to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

### IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ determined that Plaintiff did not engage in substantial gainful activity since October 29, 2013, the alleged onset date. (TR 12.) The ALJ found that Plaintiff had the following severe impairments: "spine disorder, affective disorder, anxiety disorder, and multiple sclerosis." (TR 13.) Nevertheless, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*)

The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations:

- no climbing ladders, ropes, scaffolds; occasionally climb ramps, stairs, balance, stoop, kneel, crouch, crawl;
- frequent pushing/pulling with the bilateral upper extremities; frequent operation of foot controls with the bilateral lower extremities;
- frequent reaching, including overhead, handling, fingering and feeling bilaterally;
- no exposure to hazards, including moving machinery or unprotected heights;
- work limited to simple, routine and repetitive tasks;
- occasional interaction with the public and coworkers; and
- sit/stand option after 30 min.

(TR 15.) On the basis of this determination, the ALJ posed a hypothetical to the Vocational Expert ("VE"), who testified that a person with Plaintiff's RFC could perform the requirements of representative occupations such as bench assembler (DOT 739.687-066) with 85,000 positions nationally; optical inspector (DOT 716.687-030) with 75,000 positions nationally; and surveillance monitor (DOT 379.367-010) with 65,000 positions nationally. (TR 22-23.) Accordingly, the ALJ concluded that Plaintiff was not disabled from October 29, 2013 through the date of the decision. (TR 23.)

**V.   LAW AND ANALYSIS**

    **A.   Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d

525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

**B.    Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

  (2)  Plaintiff suffered from a severe impairment; and

  (3)  the impairment met or was medically equal to a "listed impairment;" or

  (4)  Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Id.* (citations omitted).

  **C.**  **Analysis**

  Plaintiff contends that the ALJ erred in five respects. First, Plaintiff asserts that the ALJ failed to comply with the Appeals Council's remand order. (Docket no. 11, p. 19.) Second, Plaintiff alleges that the ALJ failed to give good reasons in support of her decision to give only little weight to the opinion of her treating physician, Dr. Mohamed Ayad. (*Id.* at 21.) Third, Plaintiff contends that the ALJ failed to consider that her efforts to obtain pain relief enhance her credibility. (*Id*. at 24.) Fourth, Plaintiff argues that the ALJ erred by determining that she could perform sedentary work. (*Id.* at 25.) Fifth, Plaintiff asserts that the ALJ failed to properly assess her mental RFC. (*Id*. at 27.) The undersigned will address these arguments in turn below.

6

*1. Compliance with Remand Order*

Plaintiff asserts that the ALJ failed to comply with the terms of the Appeals Council's remand order. (Docket no. 11, p. 19.) That order directed the ALJ to, *inter alia*, "[c]onsider the new evidence documenting [Plaintiff's] multiple sclerosis," "further evaluate [Plaintiff's] alleged symptoms," and "[i]f necessary, obtain evidence from a medical expert to clarify [the] nature, severity, limiting effects, and/or onset of [Plaintiff's] impairments." (TR 80.)

As a preliminary matter, Defendant asserts that this Court lacks jurisdiction to determine whether the ALJ complied with the Appeals Council's remand order. (Docket no. 15, p. 6.) In support, Defendant cites several decisions of this Court holding that the question of compliance with an Appeals Council order falls outside the scope of review established by 42 U.S.C. § 405(g). *See*, *e.g.*, *Maralason v. Comm'r of Soc. Sec.*, No. 15-11666, 2016 WL 5405302, at *4 (E.D. Mich. Sept. 28, 2016) (citing *Peterson v. Comm'r of Soc. Sec.*, No. 09-11222, 2010 WL 420000, at *7 (E.D. Mich. Jan. 29, 2010) (observing that "the district court does not review internal agency-level proceedings" and therefore declining to "address whether the ALJ complied with the specific provisions of the Appeals Council's order of remand")).

However, that position does not hold a consensus among federal courts, and was recently called into question by a judge of this Court. *See*, *e.g.*, *Kaddo v. Comm'r of Soc. Sec.*, 238 F. Supp. 3d 939, 942 (E.D. Mich. 2017). In *Kaddo*, the court observed that "the Commissioner's own regulations require an ALJ to 'take any action that is ordered by the Appeals Council,' 20 C.F.R. § 404.977(b)," and concluded that "the failure by an ALJ to follow a remand order from the Appeals Council, even if that failure is allowed to stand by a later Appeals Council ruling, can constitute a reversible error in federal court." *Id.* Although this point of law remains unsettled, the analysis in *Kaddo* is persuasive. As noted above, "[a]n ALJ's failure to follow agency rules

and regulations denotes a lack of substantial evidence." *Gayheart*, 710 F.3d at 374.  Accordingly, the undersigned submits that the Court has jurisdiction to consider whether the ALJ complied with the Appeals Council's remand order as required by 20 C.F.R. § 404.977(b).

Turning to that question, Plaintiff contends that the ALJ failed to comply with the Appeals Council's remand order, which *inter alia* directed the ALJ to "[c]onsider the new and material evidence that provides documentation of multiple sclerosis" and to "obtain additional evidence concerning the claimant's medically determinable impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 416.912-913)," which additional evidence "may include, if warranted and available, a consultative examination, and medical source statements about what the claimant can still do despite the impairments." (Docket no. 11, pp. 19-20.)

Having reviewed the ALJ's decision and the evidentiary record, the undersigned submits that the ALJ complied with the terms of the Appeals Council's remand order.  The ALJ considered the supplemental medical records regarding Plaintiff's multiple sclerosis, including "diagnostic studies of [Plaintiff's] spine [which] reveal[ed] only moderate degenerative changes," and observed that "while these images demonstrate changes consistent with multiple sclerosis, they do not demonstrate rapid progression or other acute complications." (TR 17.)  The ALJ further noted that "treating sources observed only moderate limitations in [Plaintiff's] physical functioning, and their records notes [*sic*] indicate her symptoms responded favorably to treatment" and concluded that "the medical evidence shows that [Plaintiff's] spine disorder and multiple sclerosis limit her capacity for exertional and postural activities, but not to the exclusion of sedentary work with postural and environmental limitations." (*Id.*)

8

With respect to the "additional evidence" referenced in the remand order, the undersigned notes that the Appeals Council gave the ALJ discretion to obtain a consultative examination and/or medical source statements "if warranted and available." (TR 80.) The ALJ considered the medical source statement from Dr. Mohamed Ayad, and, as discussed more fully below, gave that opinion little weight. (TR 20.) The ALJ did not obtain an additional consultative examination, and based on the ALJ's analysis of Plaintiff's impairments, obtaining such an examination was not warranted. Similarly, the ALJ determined that it was not necessary to have a medical expert "clarify [the] nature, severity, limiting effects, and/or onset" of Plaintiff's multiple sclerosis, and Plaintiff fails to establish that this determination was an abuse of the discretion provided by the remand order.

## 2. *Treating Physician Opinion*

Next, Plaintiff asserts that the ALJ failed to give good reasons in support of the determination to give only little weight to the opinion of her treating physician, Dr. Ayad. (Docket no. 11, p. 21.) In her decision, the ALJ concluded that the limitations proposed by Dr. Ayad were not consistent with the majority of the medical evidence, including Dr. Ayad's own treatment notes, which "usually reported normal strength, sensation, and functioning in [Plaintiff's] extremities." (TR 20.)

Under the treating physician rule, the ALJ will give a treating source's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). If the ALJ declines to give a treating source's opinion controlling weight, she must then balance the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole,

9

and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). The ALJ must also "give good reasons in [her] notice of determination or decision for the weight [given to a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2). Such good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Titles II & XVI: Giving Controlling Weight to Treating Source Med. Opinions*, SSR 96-2P (S.S.A. July 2, 1996).

On review of the record in this matter, the ALJ articulates good reasons in support of giving little weight to Dr. Ayad's opinion. First, as the ALJ emphasizes, Dr. Ayad's opinion is not consistent with the medical evidence of record, which indicates: (1) that Plaintiff's pain was "controlled on current medications" as of June 13, 2016 (TR 673), (2) that Plaintiff exhibited no tenderness and good range of motion in her back and extremities and 5/5 muscle strength in all major groups (TR 677-82), and (3) that Plaintiff was "without any focal neurological deficit" (TR 678) and that her sensation was "intact to light touch in all four extremities" (TR 789). Furthermore, diagnostic imaging suggested that the symptoms associated with Plaintiff's multiple sclerosis did not significantly intensify in comparison to the original diagnostic images from July of 2015. (TR 659, 715.) Finally, the undersigned observes that Dr. Ayad's opinion lacks any substantive analysis connecting Plaintiff's medical impairments to the proposed limitations, a defect which limits the ALJ's ability to evaluate the basis for Dr. Ayad's recommendations. (TR 785-86.)

### 3. *Credibility Determination / Efforts to Obtain Pain Relief*

Next, Plaintiff contends that the ALJ failed to acknowledge that her credibility was enhanced by her repeated efforts to manage her pain. (Docket no. 11, p. 24.) In support, Plaintiff

cites SSR 96-7p, which provides that "[i]n general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements." *Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7P (S.S.A. July 2, 1996).

Upon review of the ALJ's decision, Plaintiff's objection is without merit. The ALJ acknowledged that Plaintiff's "treatment records show that [she] received pain management treatment with several medications and medical monitoring." (TR 17.) The fact that the ALJ ultimately found Plaintiff to be less than fully credible does not prove that the ALJ failed to weigh the evidence of pain-management treatment in Plaintiff's favor.

### 4. RFC Determination

Fourth, Plaintiff asserts that the ALJ "erred when she found that Plaintiff could perform sedentary work, despite evidence to the contrary." (Docket no. 11, pp. 25-26.)

Because of the phrasing of Plaintiff's objection, it bears repeating that if the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). Accordingly, "evidence to the contrary" does not require remand.

Putting that point aside, the record contains substantial evidence supporting the ALJ's determination that Plaintiff could perform sedentary work with certain exceptions. As noted above, Plaintiff's medical records indicate that she had normal strength in her extremities (TR 679), normal range of motion in her spine (TR 678, 682), and normal sensation (TR 678, 789). The ALJ emphasized that, although "the record demonstrates complaints of severe body pain, worse in the neck and back, and treating source observations of tenderness in the affected areas," Dr. Ayad "report[ed] full strength in all muscle groups, symmetric reflexes, intact cranial nerves, and steady gait" and "continued to report normal physical and mental exams of the claimant in January 2016." (TR 19.) Accordingly, substantial evidence supports the ALJ's RFC assessment.

5. *Mental RFC*

Finally, Plaintiff alleges that the ALJ failed to "consider the impact of [her] mood disorder on [her] functional ability as required by SSE 96-8p," which provides that "[w]ork-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, coworkers and work situations; and deal with changes in a routine work setting." (Docket no. 11, p. 27.)

The ALJ's decision contains nearly two pages of analysis regarding Plaintiff's mental limitations, including an assessment of the treatment notes and opinions of psychological examiner Nick Boneff, Ph.D., social worker Souad Maadarani, psychiatrist Aicha Rifai, M.D., and state-agency psychological consultant Kathy Morrow, Ph.D. (TR 20-22.) Based on this evidence, the ALJ determined that Plaintiff was limited to "simple, routine and repetitive tasks" and "occasional interaction with the public and coworkers." (TR 15.) Accordingly, the ALJ did evaluate Plaintiff's mental limitations, and Plaintiff offers no persuasive evidence to contradict the ALJ's assessment.

## VI.     CONCLUSION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 11) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 15) be **GRANTED**, and that the case be dismissed in its entirety.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: September 12, 2018        s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: September 12, 2018        s/ Leanne Hosking
                                                  Case Manager